UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
TOMMY MORGAN, : CASE NO. 1:05cv2872
:
          Plaintiff, :
:
vs. : OPINION AND ORDER
: [Resolving Doc. No. 25]
NEW YORK LIFE INSURANCE CO., :
:
          Defendant. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    Defendant New York Life Insurance Co. moves for summary judgment in this employment discrimination and defamation suit. [Doc. 25]. Plaintiff Tommy Morgan opposes summary judgment and the defendant has replied. [Docs. 35, 61]. For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** the defendant's motion for summary judgment.

### I. Background

    This case arises out of the defendant's termination of Plaintiff Morgan's employment in September 2005. The plaintiff joined New York Life in 1986 as an agent stationed in Fort Worth, Texas. In 1991, the plaintiff became a partner. New York Life promoted Morgan to managing partner of its Corpus Christi office in 1996. In 2001, New York Life moved Morgan to Cleveland, Ohio to take over its Northern Ohio office. The Northern Ohio office was a "tier one" office, larger than the Corpus Christi office. The Northern Ohio office was one of two tier one offices in the company's South Central Zone. Morgan replaced Eric Campbell, who moved on to a position at corporate headquarters. At the time Morgan took the Cleveland job, he was 47 years old.

Case No. 1:05cv2872
Gwin, J.

In his new position, Morgan reported to Senior Vice Presidents Paul Morris and Brad Wilson, and also to Robert O'Neill, the South Central Zone's Chief Operating Officer. Morgan received a significant increase in pay, making as much as $800,000 annually. New York Life assigned Morgan responsibility for increasing sales of new life insurance policies and related products, and also for increasing the number of insurance agents meeting sales targets.

The parties offer differing accounts of Morgan's performance. During the plaintiff's first year in Cleveland, office productivity increased. The defendant says that by the end of Morgan's first year, the number of productive agents and first-year commissions began to decline. Between 2000 and 2004, first-year commissions decreased 24 percent, and the number of agents decreased ten percent. In comparison, the South Central Zone as a whole experienced growth of more than 20 percent. Four of the six partners in the Cleveland office left during Morgan's term.

The plaintiff offers different evidence regarding his job performance. Citing corporate documents, the plaintiff says that he received incentive compensation for exceeding office income goals. New York Life gave Morgan the highest-available performance rating during his first four years in Cleveland.[1] The Cleveland office also exceeded the minimum acceptable grade point average each year through June 2004. In May 2004, the Cleveland office ranked first out of 41 offices in the South Central Zone for weighted first-year commissions. Morgan says that he met or exceeded his goals despite losing several high-performing agents during his tenure.

New York Life placed Morgan on final notice in March 2005, and ordered him to reverse the declining production and office manpower by June 30, 2005. During the first half of 2005, manpower in the Cleveland office improved. The defendant complains that the improvement

---

[1] The highest possible performance rating was "acceptable."

Case No. 1:05cv2872
Gwin, J.

resulted largely from improper commission splits between senior and junior agents. The splits permitted several new agents to qualify for a manpower count. The defendant says it did not know about the commission splits at that point. Consequently, O'Neill withdrew Morgan's final notice in June 2005.

New York Life says a July 2005 audit revealed the improper commission splits to corporate headquarters. Morgan responded to the audit results on July 11, and denied knowledge of any impropriety. O'Neill disallowed three of the commission splits. Even so, the Cleveland office still met its manpower goal. By August, O'Neill learned the details of another improper commission split that Morgan authorized. O'Neill disallowed that split, which caused Morgan to miss the manpower target set forth in the final notice.

O'Neill and Wilson decided to terminate Morgan's employment. They informed Morgan of their decision on September 20, 2005, and gave him the choice of resigning or being fired. New York Life did not offer Morgan any opportunity to move to open lower-tier positions. The Cleveland office manager informed employees by e-mail that Morgan had decided to step down. Morgan says that the company side-stepped its standard policy of transferring under-performing managing partners to smaller offices.

New York Life appointed Mostafa Abdou, a 40 year-old man of Egyptian descent, to succeed Morgan as managing partner in Cleveland. Morgan shows evidence that New York Life promoted Abdou to Morgan's position despite Abdou having lower ratings than Morgan. A month after hiring Abdou, company officials learned of impropriety at his former office in Orlando, Florida. New York Life terminated Abdou's employment and selected Jerry Fish, a 47 year-old white male, to head up the Cleveland office.

Case No. 1:05cv2872
Gwin, J.

Morgan sued New York Life on December 13, 2005.

## II. Legal Standard

Summary judgment is appropriate when the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In seeking summary judgment, the moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the nonmoving party's case. *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding whether the moving party has met this burden, a court must view the facts and draw all inferences in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). However, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). It is not sufficient for the nonmoving party merely to show that there is some metaphysical doubt as to the material facts. *See id.* Additionally, the Court has no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

A factual dispute precludes summary judgment only if it is material, that is, if it relates to a matter essential to adjudication. The dispute must concern facts that, under the substantive law

Case No. 1:05cv2872
Gwin, J.

governing the issue, might affect the outcome of the suit. *Anderson*, 477 U.S. at 248. The factual dispute also must be genuine. The facts must be such that if proven at trial a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248. "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)); *see also Celotex*, 477 U.S. at 322.

### III. Analysis

Morgan makes the following claims against New York Life: (1) age discrimination under Ohio Rev. Code § 4112.02; (2) reverse sex discrimination under Ohio Rev. Code § 4112.02; (3) reverse race discrimination under Ohio Rev. Code § 4112.02; and (4) defamation. The Court denies summary judgment as to the age and race discrimination claims, but grants summary judgment as to the sex discrimination and defamation claims.

*A. Age Discrimination Claim*

The plaintiff may rely on direct or circumstantial evidence of discrimination in opposing summary judgment. Where a plaintiff relies on indirect evidence, he must show the following to make a prima facie case of age discrimination under Ohio Rev. Code § 4112.02: (1) he was a member of the statutorily protected class--i.e., that he was above forty years old; (2) his employer discharged him; (3) he was qualified for the position; and (4) a substantially younger person or a person not belonging to the protected class replaced him. *Vickers v. Wren Indus.*, 2005 Ohio 3656 at ¶ 27 (2nd App. Dist. 2005). If the plaintiff makes a prima facie case, the defendant must offer

Case No. 1:05cv2872
Gwin, J.

evidence of a business justification for the discharge. The plaintiff can then rebut the defendant's justification by showing it was pretext for discrimination. *Id.* at ¶ 29.

Here, the plaintiff offers sufficient direct and circumstantial evidence of age discrimination. The record contains numerous statements by Morris reflecting potential bias against older workers. Morris made several statements regarding his desire to bring "young people" into the company and his preference for "managers of the future." O'Neill and Morris also discussed the "problem" of having "older" partners, and the need to have "more energetic" and "more aggressive" partners. The trier of fact could reasonably view such statements as reflecting age bias. *See Wexler v. White's Fine Furniture*, 317 F.3d 564, 572 (6th Cir. 2003).

The plaintiff also makes a prima facie case of discrimination based on circumstantial evidence. Morgan was older than 40, and thus a member of the protected class. New York Life fired him. He was arguably qualified for his position, based on his background with the company and Morgan's evidence of at least "acceptable" performance. Morgan's initial replacement was ten years his junior. *See Grosjean v. First Energy Corp.*, 349 F.3d 332, 340 (6th Cir. 2003) (age difference of more than six years sufficient for prima facie case).

In response, the defendant argues that Morgan's termination was justified. While the defendant offers some evidence that Morgan underperformed, Morgan presents evidence to the contrary and says that the defendant's justification was pretext for discrimination. Among other evidence, Morgan shows that he had a Grade Point Average higher than the minimum and higher than the employee who New York Life chose to replace him. In testimony, New York Life claimed the principle reason it fired Morgan was a failure to recruit a certain number of employees. But other testimony suggests that Morgan was good at recruiting and a reasonable jury could find it not

Case No. 1:05cv2872
Gwin, J.

believable that New York Life would terminate a long-time successful employee.

The Court finds a genuine issue of material fact as to whether the defendant's performance actually motivated the defendant or was sufficient to warrant termination.

The Court denies summary judgment on the age discrimination claim.

*B. Reverse Sex Discrimination Claim*

Morgan charges reverse sex discrimination under Ohio Rev. Code § 4112.02. Ohio's courts refer to federal case law interpreting Title VII in determining whether employment practices have been discriminatory under Ohio Rev. Code Chapter 4112. *See Hollowell v. Society Bank & Trust*, 78 Ohio App. 3d 574, 881 (1992).

Title VII prohibits employment practices that discriminate "because of [an] individual's sex." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a *prima facie* case of sex discrimination by introducing direct evidence of discrimination or by raising an inference of discrimination by use of the *McDonnell-Douglas* paradigm. *Klive v. Tennessee Valley Authority*, 128 F.3d 337, 348 (6th Cir. 1997). In cases such as this where a male plaintiff charges reverse sex discrimination, the plaintiff establishes a *prima facie* circumstantial case by offering evidence that: (1) the defendant is "the unusual employer who discriminates against the majority," (2) the plaintiff was subject to an adverse employment action, (3) he was qualified for the position, and (4) he was replaced by or received different treatment than employees outside of his class for the same or similar conduct. *Wilson v. Ohio Dep't of Job and Family Servs.*, No. 04-4399, 2006 U.S. App. LEXIS 11884, at *15-16 (6th Cir. Apr. 25, 2006). The Sixth Circuit explains that *McDonnell-Douglas* requires a comparison to non-protected employees whose employment situation was nearly identical in all relevant aspects to a plaintiff's employment situation. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344,

-7-

Case No. 1:05cv2872
Gwin, J.

352 (6th Cir. 1998).

Morgan offers no direct evidence of reverse sex discrimination. Morgan points to only one company document suggesting that it may have considered gender in making personnel decisions. But Morgan offers no evidence that New York Life actually favored females over more qualified males. Indeed, New York Life's senior employees were overwhelmingly male. Morgan also fails to make a *prima facie* circumstantial case. For purposes of summary judgment, Morgan satisfies the second and third prongs of the *McDonnell-Douglas* paradigm because the defendant fired him and he was arguably qualified for the position. But the plaintiff offers no evidence that New York Life discriminated against males or that he received different treatment than similarly-situated females. Morgan does not point to *any* similarly-situated female New York Life employee that received more favorable treatment.

The Court thus grants summary judgment on the reverse sex discrimination claim.

*C. Reverse Race Discrimination Claim*

Morgan alleges that New York Life discriminated against whites in favor of ethnic minorities. Although it is a close call, the Court denies summary judgment on the reverse race discrimination claim.

In considering Morgan's reverse race discrimination claim, the Court again follows the *McDonnell-Douglas* reverse discrimination paradigm. *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 256 (6th Cir. 2002). While Morgan does not present direct evidence that his termination resulted from reverse racial bias, he succeeds in making a prima facie circumstantial case. Morgan points to several instances indicating that New York Life showed preference to ethnic minorities at the expense of potentially more qualified whites. For example, Morgans says that New York Life

Case No. 1:05cv2872
Gwin, J.

excluded some white employees from taking eligibility tests for certain positions to increase the number of minority executives. [Doc. 35 at 19]. The defendant does not contest this assertion. Morgan also offers several statements by New York Life executives indicating a desire to hire individuals from specific ethnic groups for specific positions. The plaintiff satisfies the first reverse discrimination prong. Morgan clearly satisfies the second and third prongs because he is white, arguably qualified, and New York Life fired him. Morgan also satisfies the fourth prong because the company replaced him with an ethnic minority.

As discussed above, at this stage, the defendant's proffered business justification does not erase material issues of fact. While the jury may find that Morgan's performance justified his termination, there is a sufficient issue of fact to preclude summary judgment.

The Court denies summary judgment on the claim of reverse race discrimination.

*D. Defamation Claim*

The plaintiff bases his defamation claim on four comments by New York Life personnel:

>   (1) On September 20, 2005, Senior Vice President Wilson announced Morgan "decided to step down."
>
>   (2) Sometime in September 2005, Executive Vice President Philip Hildebrand informed unidentified third parties that Morgan was "in over his head."
>
>   (3) Sometime in September 2005, New York Life publicized that Morgan "cooked the books."
>
>   (4) On March 14, 2005, New York Life stated that Morgan's performance was "unacceptable."

[Doc. 14 ¶¶ 39-42]. The Court only considers the alleged defamatory statements identified with particularity in the plaintiff's amended complaint. The Court notes that the plaintiff offers no

Case No. 1:05cv2872
Gwin, J.

argument opposing summary judgment as to the identified statements. To the extent the plaintiff hopes to allege other defamatory statements in his memorandum opposing summary judgment, he is too late. The plaintiff's defamation claim does not survive summary judgment.

To survive summary judgment on a defamation claim under Ohio law, the plaintiff need offer evidence of (1) a false and defamatory statement, (2) publication of the statement, (3) injury to the plaintiff, and (4) the required degree of fault on the defendant's part. *See Burr v. Perkins*, No. 2:04cv786, 2006 U.S. Dist. LEXIS 52442, at *28 (S.D. Ohio July 31, 2006). The plaintiff must demonstrate that a defamatory statement actually injured his reputation. *Id.* at *29.

As to Wilson's comment that Morgan decided to "step down," Morgan does not demonstrate that the statement injured him. Although statements that damage a plaintiff's professional reputation are considered defamatory *per se*, a statement that an employee resigned voluntarily does not injure his professional reputation. *Cf. Becker v. Toulmin*, 165 Ohio St. 549, 555, 558 (1956) (finding statement that plaintiff had been "terminated" did not constitute defamation *per se*).

The plaintiff wholly fails to demonstrate publication of the statements that he "cooked the books," was "in over his head," and that his performance was "unacceptable." The plaintiff never identifies to whom the defendant and its employees made those statements. The plaintiff's bare allegation that the defendant published the statements to unidentified "third parties" is insufficient to survive summary judgment. Further, the statements do not constitute defamation *per se* for purposes of injury. *Cf. SPX Corp. v. Doe*, 253 F. Supp. 2d 974 (N.D. Ohio 2003) (statement that plaintiff "cook[ed] the books" was hyperbole, not defamation).

The Court grants summary judgment to the defendant on the defamation claim.

IV. Conclusion

Case No. 1:05cv2872
Gwin, J.

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the defendant's motion for summary judgment. [Doc. 25]. The Court grants summary judgment to the defendant on the sex discrimination and defamation claims. The Court denies summary judgment as to the age and race discrimination claims.

IT IS SO ORDERED.


Dated: August 30, 2006          s/ *James S. Gwin*
                                                       JAMES S. GWIN
                                                       UNITED STATES DISTRICT JUDGE